**IN THE UNITED STATES DISTRICT COURT**
**FOR THE NORTHERN DISTRICT OF ILLINOIS**
**EASTERN DIVISION**

| | | |
|---|---|---|
| **LECTRIC LIMITED, INC.,** | ) | |
| **an Illinois Corporation,** | ) | |
| | ) | |
| **Plaintiff,** | ) | |
| | ) | **Civil Action No.** |
| **vs.** | ) | |
| | ) | **Judge** |
| **D G W, INC. d/b/a** | ) | |
| **MELROSE T-TOP INTERNATIONAL** | ) | **Jury Demanded** |
| **an Illinois Corporation,** | ) | |
| | ) | |
| **Defendant.** | ) | |

**COMPLAINT FOR TRADEMARK INFRINGEMENT, FALSE DESIGNATION OF ORIGIN, DECEPTIVE TRADE PRACTICES AND UNFAIR COMPETITION**

Plaintiff Lectric Limited, Inc. ("Lectric Limited"), for its Complaint for trademark infringement, false designation of origin, deceptive trade practices and unfair competition against defendant D G W, Inc. d/b/a Melrose T-Top International ("Melrose T-Top") states and alleges as follows:

**NATURE OF THE ACTION**

1.      Throughout the United States and elsewhere, classic car competitions are held, whereby points are awarded or subtracted based on the condition of the car and its resemblance to the car as originally manufactured, including both original and replacement or reproduction parts.  Standards in such contests can be so rigorous that even seemingly innocuous modern markings  on replacement or reproduction parts can result in the deduction of points.  Thus, consumers of replacement or reproduction products for classic cars are very detail oriented and exacting in their review of product offerings.

PFS:007110.0001.1277043.1

2.      Lectric Limited manufactures and sells replacement/reproduction wiring and electrical products, including headlamps, for a variety of classic, custom and "muscle" cars and trucks.  Among other products, Lectric Limited sells headlamps under its T-3 mark.

3.      In an effort to make its headlamps more closely resemble the headlamps that were used in the original classic automobiles and thus more desirable to owners of classic cars, Defendant, Melrose T-Top has purposely (i) failed to mark its headlamps with the "DOT" designation as required by federal regulations and (ii) included Lectric Limited's T-3 mark on its headlamps without authorization from Lectric Limited.  Melrose T-Top is also marking certain of its products with "USA" to falsely give the impression that the products are manufactured and assembled in the United States when, on information and belief, they are not.  Given the resultant marketplace confusion and harm, as alleged more fully below, Lectric Limited seeks injunctive and monetary relief from Melrose T-top for trademark infringement, false designation of origin, unfair competition and consumer fraud and deceptive trade practices.

## THE PARTIES

4.      Plaintiff, Lectric Limited, Inc. is an Illinois corporation having its principal place of business at 6750 W. 74th Avenue, Suite A, Bedford Park, Illinois 60638.

5.      D G W, Inc. d/b/a Melrose T-Top International is an Illinois Corporation having a place of business at 100 West Ellwalk Avenue, Cortland, Illinois 60112.  Melrose T-Top manufactures and sells Corvette® automobile T-tops and roofs.  Melrose T-Top also sells headlamps and associated parts for Corvettes and other General Motors Corporation ("GM") automobiles.

6.      Both Lectric Limited and Melrose T-Top currently do business in Illinois.

2

## JURISDICTION AND VENUE

7.      This is an action for trademark infringement, false designation of origin, unfair competition and deceptive trade practices arising under the Federal Trademark Act, also known as the Lanham Act (15 U.S.C. §§1051-1127) and the common and statutory law of the State of Illinois, as set forth hereinafter.  This Court has subject matter jurisdiction over the claims pursuant to 15 U.S.C. §1121 and 28 U.S.C. §1338(a), 28 U.S.C. §1338(b) and 28 U.S.C. §1367.

8.      This Court has personal jurisdiction over all of the parties herein because they are all residents of Illinois and transact business in Illinois.

9.      Venue is proper in this district under 28 U.S.C. §§ 1391(b) and (c) because a substantial part of the events giving rise to the claims associated herein occurred in this district and Melrose T-Top is a corporation subject to personal jurisdiction herein.

## FACTS COMMON TO ALL COUNTS

**A.      Classic or Antique Cars.**

10.      While the exact definition varies as to how old a car has to be to be considered a classic car, GM cars manufactured between 1956 and 1972 are generally considered classic or antique cars.

11.      Many people who own classic or antique cars showcase them and enter them into various competitions.  In many classic car competitions, points may be deducted for any replacement/reproduction part that is different in appearance from the original part that was sold with the vehicle.  Accordingly, there is a desire in the marketplace for exact replicas of the original parts.

12.      As a result of the demand for replacement parts, various companies including Lectric Limited sell replacement or reproduction parts for classic cars.

PFS:007110.0001.1277043.1

**B.      Federal Regulations and Standards for Replacement/Reproduction Headlamps.**

13.     The National Highway Traffic and Safety Administration ("NHSTA"), under the Department of Transportation, was established by the Highway Safety Act of 1970 to, among other things, help reduce death, injuries and economic loss from motor vehicle crashes by setting and enforcing safety performance standards for motor vehicles and their equipment.

14.     Since 1972, NHTSA and the U.S Department of Transportation require newly manufactured headlamps and replacement headlamps to be marked with a "DOT" designation on the lens.  Specifically, Title 49, Part 571 of the Code of Federal Regulations contains the Federal Motor Vehicle Safety Standards for motor vehicle and motor vehicle equipment established under section 103 of the National Traffic and Motor Vehicle Safety Act of 1966.  49 C.F.R. § 571.108 ("Standard No. 108") specifies requirements for original and replacement/reproduction lamps, reflective devices and associated equipment.   On January 1, l972, Standard No. 108 became effective for equipment intended to replace original equipment on all motor vehicles manufactured on and after January 1, l972.

15.     Section S6.5.1 of Standard 108 states that:

> [t]he lens of each original equipment and replacement headlamp, and of each original equipment and replacement beam contributor, and each replacement headlamp lens for an integral beam or replaceable bulb headlamp, must be marked with the symbol "DOT" either horizontally or vertically to indicate certification under 49 U.S.C. 30115.

16.     The "DOT" marking on the lens indicates that the manufacture of the lamps certifies that the lamps have been tested and meet all applicable national safety standards.

17.     Lamps that may be utilized in vehicles that predate January 1, 1972 are also installable on vehicles manufactured after this effective date.  Accordingly, any lamps sold after

4

the effective date of Standard 108 must comply with the Standard and be marked "DOT" and certified accordingly.

18.     Plainly, the original T-3 branded headlamps sold as original equipment or replacement headlamps sold prior to 1972 on antique or classic cars between 1956 and 1972 did not include the "DOT" marking.  Thus, to avoid the potential loss of points in classic car competitions, owners of the antique and classic cars (i.e., the market for these replacement headlamps sold by the parties to this lawsuit) desire to utilize lamps that do not include the "DOT" marking.

**D.      General Motors' headlamps.**

19.     Between 1956 and 1972, GM sold automobiles that included headlights or headlamps that were marked with the GUIDE trademark and a T-3 trademark.  GM registered the GUIDE mark with the US Patent and Trademark Office in 1985 for "electric lamps for automobiles, trucks, tractors and buses", claiming first use of the GUIDE mark in commerce going back to 1925.

20.     Upon information and belief, after 1972, GM and its predecessors-in-interest to the T-3 mark did not manufacture or sell headlamps using the T-3 mark and subsequently abandoned the T-3 mark.

**E.      Lectric Limited's Business**

21.     Lectric Limited was incorporated in 1987 to manufacture and sell replacement and reproduction parts for automobiles.  Among the products that Lectric Limited sells are replacement headlamps for GM classic cars.  To Lectric Limited's knowledge, it is currently the only supplier of licensed GUIDE headlamps that are compliant with the applicable laws and regulations administered by the NHTSA.

PFS:007110.0001.1277043.1

**F.      Lectric Limited's Rights in the T-3 Mark.**

22.      Since at least as early as 1989, Lectric Limited has used the T-3 mark in interstate commerce on or in connection with automotive headlamps.  In January, 2014, on information and belief, Lectric Limited was the only company utilizing the T-3 trademark on or in connection with the sale of replacement/reproduction headlamps.

23.      Lectric Limited has expended a substantial amount of time, money and effort promoting and marketing its distinctive T-3 trademark.  As a result of its widespread promotion and use, Lectric Limited's T-3 trademark has become: extremely well known among consumers in the relevant market and community; uniquely associated with and hence identifies Lectric Limited as the source of the associated headlamps; and a valuable asset of Lectric Limited and a symbol of its goodwill.

**G.      Melrose T-Top's Sale of T-3 Branded Headlamps.**

24.      Melrose T-Top sells automotive aftermarket parts, including headlamps.

25.      Notwithstanding Lectric Limited's well-known trademark rights in the T-3 mark, Melrose T-Top adopted and used the T-3 mark in connection with the sale of headlamps ("the Melrose T-3 headlamps").  Such use by Melrose T-Top has been without the consent of Lectric Limited.  Melrose T-Top's primary audience/customer base for these headlamps is owners of GM classic cars made between 1957 and 1972.

26.      Lectric Limited, through its counsel, notified Melrose T-Top of its rights in the T-3 trademark in letters dated June 1, 2015 and June 17, 2015.  Despite its knowledge of Lectric Limited's rights, Melrose T-Top continues to sell and/or offer to sell headlamps using Lectric Limited's T-3 mark without Lectric Limited's permission.

PFS:007110.0001.1277043.1

27.     Further, the Melrose T-3 headlamps are sold and have been sold after the 1972 enactment of Standard 108. These lamps may be utilized in a variety of older (e.g., GM classic cars) and newer vehicles (including vehicles manufactured after the effective date of this standard) and are not merely for display purposes. Thus, Standard 108 applies to the Melrose T-Top T-3 headlamps. Nevertheless, the Melrose T-Top T-3 headlamps do not include the "DOT" marking on the lens as required by Standard 108.

28.     Accordingly, Melrose T-Top's intentional failure to mark the lens perversely makes the lamps significantly more attractive to the target consumers—classic car owners.

29.     Moreover, upon information and belief, because they are not marked "DOT", the Melrose T-Top T-3 headlamps have not been tested for compliance with and/or are not compliant with the applicable Department of Transportation regulations and standards.

**H.     Melrose T-Top's Sale of Products Bearing USA Designation**

30.     Melrose is currently selling products in the United States that are marked with the "USA" designation. A photograph of a portion of the lens of one of Melrose T-Top's replacement/reproduction lamps showing the "USA" marking molded thereon is attached hereto as Exhibit A.

31.     Consumers, seeing the "USA" designation marked on a product such as Melrose T-Top's replacement/reproduction lamps, would necessarily be led to believe that the products so marked are made in the United States of America.

32.     Despite its use of the "USA" designation, upon information and belief, all or virtually all of the parts of the Melrose T-Top replacement/reproduction lamps and other products are manufactured and/or assembled outside of the United States.

**COUNT I**
**(Violation of the Lanham Act, 15 U.S.C. § 1125(a),**
**Through Use of the T-3 Mark)**

33.     Lectric Limited repeats and realleges each of the allegations contained in paragraphs 1 through 32 as if fully set forth herein.

34.     Melrose T-Top's use of the T-3 mark without authority from Lectric Limited constitutes use of a false designation of origin and false or misleading representations in interstate commerce.  This use wrongly and falsely designates and represents the origin of Melrose T-Top's products as originating from or being connected with Lectric Limited.  Melrose T-Top's use is likely to cause confusion, mistake and/or deception as to Melrose T-Top's affiliation, connection or association with Lectric Limited, or to the origin, sponsorship and/or affiliation of Melrose T-Top's goods by Lectric Limited, in violation of 15 U.S.C. § 1125(a) (also known as Section 43(a) of the Lanham Act).

35.     The confusion, mistake or deception referred to herein arises out of the aforesaid acts of Melrose T-Top, which constitute trademark infringement, false designation of origin and unfair competition in violation of Section 43(a) of the Trademark Act of 1946, as amended, 15 U.S.C. § 1125(a).

36.     Upon information and belief, the aforesaid acts were undertaken willfully, with an intentional disregard of the rights of Lectric Limited and with the intention of causing confusion, mistake or deception, and to trade on the reputation and goodwill of Lectric Limited.

37.     This unfair competition and trademark infringement has occurred in interstate commerce and has caused, and unless restrained by this Court, will continue to cause, serious and irreparable injury to Lectric Limited, and to its goodwill and business reputation.

PFS:007110.0001.1277043.1

38.    Lectric Limited has no adequate remedy at law. Monetary damages are inadequate to compensate Lectric Limited for the injuries caused by Melrose T-Top.  Lectric Limited's injuries include, without limitation, loss of sales and future sales, diminished goodwill, brand erosion and irreparable injury to Lectric Limited's market position and reputation as the preferred provider of replacement/reproduction headlamps for GM vehicles sold between 1956 and 1972.

39.    As a result of Melrose T-Top's unfair competition and trademark infringement, Lectric Limited has incurred damages in an amount to be proven at trial.

40.    Upon information and belief, Melrose T-Top's trademark infringement and unfair competition is deliberate, willful and without any extenuating circumstances, and is an exceptional case within the meaning of Lanham Act section 35, 15 U.S.C. § 1117.  Lectric Limited is therefore entitled to recover three times the amount of its actual damages, its reasonable  attorneys' fees and costs incurred in this action and prejudgment interest.

## COUNT II
### (Violation of the Lanham Act, 15 U.S.C. 1125(a), Through Use of the "USA" Marking)

41.    Lectric Limited incorporates by reference the allegations of paragraphs 1 through 32 as if fully set forth herein.

42.    The aforesaid acts of Melrose T-Top, including but not limited to its use of the designation "USA" on certain products, including on the lens of certain replacement/reproduction lamps in interstate commerce, constitutes a false designation of origin and/or a false or misleading description of fact which is likely to cause confusion or to cause mistake, or to deceive as to the origin of its goods within the meaning of 15 U.S.C. § 1125(a)(1)(A).

9

43.     Such conduct is unfair competition in violation of the Lanham Act as it constitutes a false description or designation of origin of such goods by falsely identifying them as manufactured in and/or consisting of parts manufactured in and/or assembled in the United States when, upon information and belief, all or virtually all of Melrose T-Top's replacement/reproduction lamps and other products marked with the "USA" designation were manufactured and assembled outside of the United States.

44.     Upon information and belief, the aforesaid acts of Melrose T-Top were knowing, deliberate, willful, and intended to cause mistake or deception among consumers as to the origin of the products.

45.     Melrose T-Top's continued misleading use of the designation "USA" on headlamps in interstate commerce: creates a likelihood of injury to Lectric Limited's headlamp business; causes a likelihood of confusion as to the origin of Melrose T-Top's goods; and otherwise allows Melrose T-Top to unfairly compete with Lectric Limited.   This improper use of the designation "USA" has occurred in interstate commerce.  It has caused, and unless restrained by this Court, will continue to cause, serious and irreparable injury to Lectric Limited, and will result in Melrose T-Top being unjustly enriched and unlawfully deriving profits and gains.

46.     Lectric Limited has no adequate remedy at law. Monetary damages are inadequate to compensate Lectric Limited for the injuries caused by Melrose T-Top.  Lectric Limited's injuries include, without limitation, loss of sales and future sales, and irreparable injury to Lectric Limited's market position and reputation as the preferred provider of replacement/reproduction headlamps for GM vehicles sold between 1956 and 1972.

PFS:007110.0001.1277043.1

47.     As a result of Melrose T-Top's actions, Lectric Limited has incurred damages in an amount to be proven at trial.

48.     Upon information and belief, Melrose T-Top's misleading use of the "USA" designation is deliberate, willful, fraudulent and without any extenuating circumstances, and is an exceptional case within the meaning of Lanham Act section 35, 15 U.S.C. § 1117.  Lectric Limited is therefore entitled to recover three times the amount of its actual damages, the attorneys' fees and costs incurred in this action and prejudgment interest.

**COUNT III**
**(Violation of the Illinois Uniform Deceptive Trade Practices Act,**
**815 ILCS 510/1 *et seq.*)**

49.     Lectric Limited incorporates by reference the allegations of paragraphs 1 through 32 as if fully set forth therein.

50.     As alleged herein, Melrose T-Top's infringing use of the T-3 mark has caused, and is likely to cause in the future, a public injury and a detrimental effect on consumers as to the origin of Melrose T-Top's goods as they give rise to the false understanding that Melrose T-Top's business has some connection with Lectric Limited.  Said acts constitute deceptive trade practices in the course of Melrose T-Top's business in violation of the Uniform Deceptive Trade Practices Act of the State of Illinois, 815 ILCS. 510/1 *et seq.*

51.     As alleged herein, Melrose T-Top's failure to mark its goods with the "DOT" marking as required by federal regulation and false and misleading use of the "USA" designation have caused, and are likely to cause in the future, a public injury and a detrimental effect on consumers as to the origin and approval and certification of Melrose T-Top's goods.  Said acts constitute deceptive trade practices in the course of Melrose T-Top's business in violation of the Uniform Deceptive Trade Practices Act of the State of Illinois, 815 ILCS. 510/1 *et seq.*

52.     By not complying with the federal regulations requiring the marking of "DOT" on the lens of the lamps, Melrose T-Top is able to sell replacement/reproduction lamps that more closely reflect the appearance of the original lamps utilized in antique cars between 1956 and 1972, thereby making them more desirable to antique or classic car owners in the marketplace.

53.     Since Melrose T-Top began selling replacement/reproduction lamps with the T-3 trademark (but without the "DOT" certification mark on the lens as required) for antique cars, sales of Lectric Limited's replacement/reproduction lamps with the T-3 trademark have significantly decreased.

54.     Melrose T-Top's deceptive trade practices have caused, and unless restrained by this Court will continue to cause, serious and irreparable injury to Lectric Limited.

55.     Lectric Limited has no adequate remedy at law. Monetary damages are inadequate to compensate Lectric Limited for the injuries caused by Melrose T-Top.  Lectric Limited's injuries include, without limitation, loss of sales and future sales, diminished goodwill, brand erosion and irreparable injury to Lectric Limited's market position and reputation as the preferred provider of replacement/reproduction headlamps for GM vehicles sold between 1956 and 1972.

56.     As a result of Melrose T-Top's violation of the Uniform Deceptive Trade Practices Act of the State of Illinois, 815 ILCS. 510/1 *et seq*., Lectric Limited has also incurred damages in an amount to be proven at trial, plus attorneys' fees and costs incurred in this action and prejudgment interest.

PFS:007110.0001.1277043.1

**COUNT IV**
**(Violation of the Illinois Consumer Fraud and**
**Deceptive Business Practices Act, 815 ILCS 505/1 *et seq.*)**

*57.* Lectric Limited incorporates by reference the allegations of paragraphs 1 through 32 as if fully set forth herein.

*58.* As alleged herein, Melrose T-Top's infringing use of the T-3 mark has caused, and is likely to cause in the future, a public injury and a detrimental effect on consumers as to the origin of Melrose T-Top's goods as they give rise to the false understanding that Melrose T-Top's business has some connection with Lectric Limited. Said acts constitute unfair methods of competition and unfair or deceptive acts or practices in the course of Melrose T-Top's business in violation of the Illinois Consumer Fraud and Deceptive Business Practices Act, 815 ILCS 505/1, *et seq.*

59. As alleged herein, Melrose T-Top's failure to mark its goods with the "DOT" marking as required by federal regulation and false and misleading use of the "USA" designation have caused, and are likely to cause in the future, a public injury and a detrimental effect on consumers as to the origin and approval and certification of Melrose T-Top's goods. Said acts constitute unfair methods of competition and unfair or deceptive acts or practices in the course of Melrose T-Top's business in violation of the Illinois Consumer Fraud and Deceptive Business Practices Act, 815 ILCS 505/1, *et seq.*

60. By not complying with the federal regulations requiring the marking of "DOT" on the lens of the lamps, Melrose T-Top is able to sell replacement/reproduction lamps that more closely reflect the appearance of the original lamps utilized in antique cars between 1956 and 1972, thereby making them more desirable to antique or classic car owners in the marketplace.

PFS:007110.0001.1277043.1

61.     Furthermore, the regulations require the use of the "DOT" designation to indicate that the lamps meet all applicable safety regulations and standards.  Because they are not marked "DOT", Lectric Limited is informed and believes  that the Melrose T-Top T-3 headlamps have not been tested and certified that they comply with the applicable NHTSA and DOT regulations and standards.

62.     Because all replacement headlamps must comply with the applicable standards and regulations administered by NHTSA and DOT, upon information and belief, consumers purchasing the Melrose T-Top T-3 headlamps have purchased the headlamps believing that they comply with all applicable federal regulations and standards when they do not.

63.     Since Melrose T-Top began selling replacement/reproduction lamps with the T-3 trademark (but without the "DOT" certification mark on the lens as required) for antique cars, sales of Lectric Limited's replacement/reproduction lamps with the T-3 trademark have significantly decreased.

64.     Melrose T-Top's deceptive trade practices have caused, and unless restrained by this Court will continue to cause, serious and irreparable injury to Lectric Limited.

65.     Lectric Limited has no adequate remedy at law. Monetary damages are inadequate to compensate Lectric Limited for the injuries caused by Melrose T-Top.  Lectric Limited's injuries include, without limitation, loss of sales and future sales, diminished goodwill, brand erosion and irreparable injury to Lectric Limited's market position and reputation as the preferred provider of replacement/reproduction headlamps for GM vehicles sold between 1956 and 1972.

66.     As a result of Melrose T-Top's violation of the Uniform Deceptive Trade Practices Act of the State of Illinois, 815 ILCS. 510/1 *et seq*., Lectric Limited has also incurred

damages in an amount to be proven at trial, plus attorneys' fees and costs incurred in this action and prejudgment interest.

## RELIEF REQUESTED

WHEREFORE, Lectric Limited prays that this Court enter judgment in its favor and against Melrose T-Top and enter an order granting the following relief:

A.      Finding that Lectric Limited's right in and to the T-3 mark has been infringed by Melrose T-Top, and that Melrose T-Top's actions constitute unfair competition, false designation of origin and deceptive trade practices.

B.      Declaring that Melrose T-Top has willfully violated Section 43(a) of the Lanham Act.

C.      Declaring that Melrose T-Top has committed acts of unfair competition and deceptive business and trade practices under 815 ILCS 505/1, *et seq.* and 815 ILCS 510/1 *et seq.* and Illinois common law and that such acts were willfully committed.

D.      Ordering that Melrose T-Top, its officers, directors, agents, servants, employees, successors, shareholders, assigns and attorneys, as well as all those in active concert or participation with it, be preliminarily and permanently enjoined and restrained from:

a.  Using Lectric Limited's T-3 mark or other designs, designations and indicia which are likely to cause confusion, mistake or deception with respect to Lectric Limited's T-3 mark;

PFS:007110.0001.1277043.1

b.  Falsely advertising or promoting goods, such that said advertisements or promotion misrepresent the nature, characteristics, qualities or origin of Melrose T-Top's goods or otherwise suggest that Melrose T-Top or its products are affiliated or associated with Lectric Limited or its products;

c.  Doing any other act or thing likely to induce the mistaken belief that Melrose T-Top or its products are in any way affiliated, connected, or associated with Lectric Limited or its products;

d.  Marking its products with "USA" or any other designation that falsely indicates or implies that the products and its parts are made and assembled in the United States of America when they are not;

e.  Failing to comply with the applicable federal regulations and standards for the headlamps it sells, including continuing to fail to mark the headlamps with the "DOT" designation; and

f.  Otherwise competing unfairly with Lectric Limited.

E.  Awarding Lectric Limited monetary relief in an amount to be fixed by the Court or Jury in their discretion as just, including all profits received by Melrose T-Top from sales and revenues of any kind made as a result of its actions, and all damages sustained by Lectric Limited as a result of Melrose T-Top's actions, and that such profits and damages be trebled pursuant to 15 U.S.C. §1117.

PFS:007110.0001.1277043.1

F.      Ordering Melrose T-Top to recall and deliver up for impoundment during the pendency of this action and for destruction upon entry of judgment, all infringing and improperly designated articles, including those products not marked with the "DOT" notification as required.

G.      Ordering Melrose T-Top to file with this Court and serve on Lectric Limited within 30 days after the injunction, a written report, under oath, setting forth in detail the manner and form in which Melrose T-Top has complied with the order or injunction.

H.      Pursuant to 15 U.S.C. § 1117(a) and (b), and 815 ILCS §§ 505/10(a) & 510/3 and/or Illinois common law, because of the exceptional nature of this case resulting from Melrose T-Top's deliberate and willful actions, awarding to Lectric Limited all reasonable attorneys' fees, costs, and disbursements incurred by it as a result of this action and prejudgment interest;

I.      That Lectric Limited be granted such further relief as the Court may deem appropriate under the circumstances.

## DEMAND FOR JURY TRIAL

Lectric Limited demands a trial by jury on all issues so triable.

Respectfully submitted,

LECTRIC LIMITED, INC.,

By:      /s/ Scott W. Smilie
          Scott W. Smilie, ARDC #6243914
          Phillip S. Reed, ARDC #6188253
          Jonathan S. Goodman, ARDC #6256015
          Patzik, Frank & Samotny Ltd.
          150 S. Wacker Drive, Suite 1500

17

Chicago, IL 60606
312/551-8300
312/551-1101 (Fax)
ssmilie@pfs-law.com
preed@pfs-law.com
jgoodman@pfs-law.com

PFS:007110.0001.1277043.1