# UNITED STATES DISTRICT COURT
# NORTHERN DISTRICT OF ILLINOIS
# EASTERN DIVISION

| | |
|---|---|
| LECTRIC LIMITED, INC., an Illinois Corporation, | )<br>)<br>) |
| Plaintiff/Counter-Defendant, | )<br>) No. 15 C 7744 |
| v. | )<br>) Judge Sara L. Ellis |
| D G W, INC. d/b/a MELROSE T-TOP INTERNATIONAL, an Illinois Corporation, THE PARTS PLACE, INCORPORATED, an Illinois Corporation, and JVI HOLDINGS, LLC, an Illinois Corporation, | )<br>)<br>)<br>)<br>)<br>)<br>) |
| Defendants/Counter-Plaintiffs. | ) |

## OPINION AND ORDER

Lectric Limited sued D G W, Inc. d/b/a Melrose T-Top International ("DGW/Melrose"), The Parts Place, Incorporated ("Parts Place"), and JVI Holdings, LLC ("JVI") (collectively, the "Defendants") regarding their use and claimed ownership of marks and logos that conflicted with Lectric Limited's common law trademark claims. Lectric Limited then learned that Griffin Williams LLP ("Griffin Williams") represented each Defendant despite the positions in their answers and counterclaims that might adversely affect other Defendants, if true. Lectric Limited moves to disqualify Griffin Williams from representing any Defendant because of what Lectric Limited alleges are unwaivable conflicts of interest and because one of Griffin Williams' partners will need to testify in this litigation. The Court grants in part and denies in part Lectric Limited's motion [52]. Because there is a question whether Griffin Williams obtained informed consent to represent each Defendant concurrently and because the Court finds that Griffin Williams ceased representation of its first client, DGW/Melrose, in order to continue

representing Parts Place and JVI, the Court finds that an ethical violation occurred. The Court will not disqualify Griffin Williams from continued participation in this litigation if each Defendant now provides informed consent, but, as a sanction, the Court strikes Defendants' previous pleadings filed by Griffin Williams. And because Lectric Limited has not shown that Griffin Williams' partner will be a necessary witness in this case, the Court denies without prejudice Lectric Limited's motion to disqualify the individual attorney.

## BACKGROUND[1]

Lectric Limited produces classic-car replacement parts, including headlights bearing its alleged "T-3" mark, and it sued DGW/Melrose for manufacturing similar headlamps emblazoned with "T-3" and for deceptively labeling DGW/Melrose's "Power Beam" headlights as "Made in America." DGW/Melrose answered the lawsuit and countersued Lectric Limited, denying that Lectric Limited should have any trademark protection for any T-3 mark and claiming that General Motors Company ("GM") licenses to DGW/Melrose the right to use "T-3" on headlamps. After discovery commenced, Lectric Limited learned that Parts Place might be commissioning DGW/Melrose to build its headlamps. Lectric Limited also learned that Parts Place's sole owner, Joseph Improta, founded JVI, which obtained trademark registrations for three logos bearing "T-3" and then demanded that Lectric Limited cease using T-3 marks. Lectric Limited then filed an amended complaint against all Defendants, alleging trademark rights in T-3 marks, infringement by the Defendants, and the invalidity of JVI's T-3 logos. In response, JVI answered and DGW/Melrose and Parts Place answered and countersued, all using the same attorney that has represented DGW/Melrose since the beginning of litigation, Griffin Williams.

---

[1] The facts in this background section are taken from the parties' pleadings and briefing on the motion to disqualify.

2

Griffin Williams' clients presented a multitude of defenses and counterclaims. Regarding the parties' disputes about T-3-based marks, DGW/Melrose, Parts Place, and JVI maintained that GM has the rights to "T-3" (a position that GM subsequently denied, disclaiming any right in a T-3 mark). DGW/Melrose and Parts Place also alternatively claimed that "T-3" is generic or descriptive and therefore not subject to trademark protection. JVI also denied Lectric Limited's assertions that JVI has no enforceable trademarks in the logos, essentially asserting JVI's right in its registered logos. Lectric Limited further learned that to obtain registration and ownership of its logos, JVI had represented to the United States Patent and Trademark Office ("USPTO") that it was the owner of the T-3 logos and that no other person had rights in the logos or any close approximation.

DGW/Melrose and Parts Place alleged in their separate counterclaims against Lectric Limited that Lectric Limited falsely registered a trademark for a "Power Beam" mark that either GM actually holds or that is too generic or descriptive to qualify for trademark protection. Parts Place also contemporaneously filed an opposition to Lectric Limited's Power Beam trademark before the USPTO, claiming that Parts Place actually owns the Power Beam mark and asserting that Power Beam is not generic or descriptive but instead proper for trademark protection. Alleging potential contradictions between the positions taken by Griffin Williams' clients and noting that Griffin Williams partner Richard Williams had represented Parts Place and JVI in their filings before the USPTO, Lectric Limited moved to disqualify Griffin Williams. The Court stayed discovery and allowed supplemental discovery on Lectric Limited's ethical allegations, which the parties completed. Griffin Williams then withdrew its representation of DGW/Melrose and Defendants moved to voluntarily dismiss certain counterclaims and affirmative defenses.

## LEGAL STANDARD

A motion to disqualify counsel requires a two-step analysis where a court (1) considers whether there is an ethical violation and then, if so, (2) determines whether disqualification is appropriate to remedy the violation. *alfaCTP Sys., Inc. v. Nierman*, No. 15-cv-9338, 2016 WL 687281, at *4 (N.D. Ill. Feb. 19, 2016). Disqualification of counsel is a "drastic measure" imposed only "when absolutely necessary." *Black Rush Mining, LLC v. Black Panther Mining*, 840 F. Supp. 2d 1085, 1089 (N.D. Ill. 2012) (quoting *Schiessle v. Stephens*, 717 F.2d 417, 420 (7th Cir. 1983)). Because disqualification deprives a party of the representation of their choosing, disqualification motions—although sometimes legitimate and necessary—are "viewed with extreme caution for they can be misused as techniques of harassment." *Freeman v. Chicago Musical Instrument Co.*, 689 F.2d 715, 721 (7th Cir. 1982). "There must be solid evidence to support an allegation of conflict." *Fematt v. Finnigan*, No. 11-cv-1530, 2012 WL 3308759, at *2 (N.D. Ill. Aug. 13, 2012). The moving party therefore bears a heavy burden of proving the facts required for disqualification. *alfaCTP Sys., Inc.*, 2016 WL 687281, at *4; *Guillen v. City of Chicago*, 956 F. Supp. 1416, 1421 (N.D. Ill. 1997).

## ANALYSIS

Lectric Limited argues that Griffin Williams cannot represent DGW/Melrose, Parts Place, or JVI because (1) Griffin Williams represented each Defendant at the same time despite the fact that each Defendant presented conflicted positions on trademark claims inside and outside this litigation and because (2) Richard Williams will be a necessary witness in Lectric Limited's case against Defendants. The Court analyzes Lectric Limited's motion under the American Bar Association's Model Rules of Professional Conduct (the "Model Rules"), which this district has generally adopted as its rules of professional conduct. N.D. Ill. L.R. 83.50. Local Rule 83.50

establishes one exception to its general adoption of the Model Rules and instructs the Court to turn to the "rules of Professional Conduct in the state in which the lawyer's principal office is located" when the Model Rules are silent on the issue raised or are inconsistent with the state's rules. *Id.* The Court would turn to the Illinois Rules of Professional Conduct after the Model Rules if necessary, but the Court has not found that the Model Rules lack sufficient guidance or are materially inconsistent with their analogues in the Illinois Rule of Professional Conduct. And because no party requests an evidentiary hearing and because there is no need for such a hearing, Lectric Limited's "motion may be resolved on the papers." *Steines v. Menrisky*, --- F. Supp. 3d. ----, 2016 WL 7034132, at *1 (N.D. Ill. Dec. 2, 2016).

I.  **Violation of Model Rule 1.7**

Model Rule 1.7 states that a lawyer ordinarily "shall not represent a client if the representation involves a concurrent conflict of interest," which exists if (1) "the representation of one client will be directly adverse to another client" or (2) "there is a significant risk that the representation of one or more clients will be materially limited by the lawyer's responsibilities to another client, a former client or a third person or by a personal interest of the lawyer." Model R. of Prof'l Conduct R. 1.7(a). Notwithstanding the existence of such a concurrent conflict of interest, "a lawyer may represent a client if: (1) the lawyer reasonably believes that the lawyer will be able to provide competent and diligent representation to each affected client; (2) the representation is not prohibited by law; (3) the representation does not involve the assertion of a claim by one client against another client represented by the lawyer in the same litigation or other proceeding before a tribunal; and (4) each affected client gives informed consent, confirmed in writing." *Id.* R. 1.7(b). Because conflicts of one firm attorney are imputed to the entire firm and because the same Griffin Williams attorneys represented all three Defendants in

this litigation, the Court analyzes conflicts as to Griffin Williams. *See id.* R. 1.10(a) ("While lawyers are associated in a firm, none of them shall knowingly represent a client when any one of them practicing alone would be prohibited from doing so by Rule[ ] 1.7" unless "waived by the affected client under the conditions stated in Rule 1.7").

First, the Court resolves the parties' disagreement as to which Defendants are relevant to Lectric Limited's motion. After Lectric Limited filed its motion to disqualify, Griffin Williams ceased representing DGW/Melrose, and DGW/Melrose's attorneys from Griffin Williams, Kristin Stone and Joshua Feagans, moved to withdraw their appearances for DGW/Melrose. Doc. 77.[2] After, DGW/Melrose did not respond to Lectric Limited's motion to disqualify. Parts Place and JVI did respond, and they argue that because Griffin Williams no longer represents DGW/Melrose, the Court should not address Griffin Williams' representation of DGW/Melrose. "Courts generally determine client status (current versus former) at the time of complaint filing." *See alfaCTP Sys., Inc.*, 2016 WL 687281, at \*4. Here, Griffin Williams represented DGW/Melrose until the time came for the Defendants to respond to the motion to disqualify. Further, Griffin Williams' actions raise the "hot potato doctrine," which "bars an attorney from representing a more lucrative client in a case against a less lucrative client, which the attorney dropped like a 'hot potato' when the more lucrative client came along." *See Metro. Life Ins. Co. v. Guardian Life Ins. Co. of Am.*, No. 06 C 5812, 2009 WL 1439717, at \*3 (N.D. Ill. May 18, 2009); *ValuePart, Inc. v. Clements*, No. 06 C 2709, 2006 WL 2252541, at \*2 (N.D. Ill. Aug. 2, 2006). "The 'hot potato doctrine' clearly applies to those instances in which a lawyer drops a current client, for which the representation continued, in order to turn that client into a former client as a means of curing a simultaneous representation of adverse interests." *Metro. Life Ins.*

---

[2] The Court granted the motion to withdraw, but inadvertently included DGW/Melrose's new attorney, Christian Cosentino, in the list of withdrawing attorneys from Griffin Williams. Doc. 85.

*Co.*, 2009 WL 1439717, at *5 (citations omitted). When the doctrine applies, the former client is treated as a current client for the client conflicts analysis. *See ValuePart, Inc.*, 2006 WL 2252541, at *2 ("A lawyer's withdrawal from representing a client only renders the client a former client when: (1) it occurs at a time when the lawyer and the client had contemplated the end of the representation; and (2) the lawyer's primary motivation for terminating the relationship was not his desire to represent the new client."). Because it appears that Griffin Williams stopped representing DGW/Melrose because of a potential conflict and "not because of any natural conclusion or closure of the pending matters in which [Griffin Williams] was representing [DGW/Melrose]," the Court treats DGW/Melrose as a current client for purposes of this motion. *See id.* (finding concurrent conflict of interest between current client and former client because former client was dropped to represent the current client).

Parts Place and JVI also argue that there can be no adversity between them because one person, Mr. Improta, wholly owns both of them. The Model Rules do not bar a lawyer from representing a party adverse to a client's corporate affiliate in unrelated matters "unless the circumstances are such that the affiliate should also be considered a client of the lawyer, there is an understanding between the lawyer and the organizational client that the lawyer will avoid representation adverse to the client's affiliates, or the lawyer's obligations to either the organizational client or the new client are likely to limit materially the lawyer's representation of the other client." Model R. of Prof'l Conduct R. 1.7 cmt. 34; *see also Standard Ret. Servs., Inc. v. Ky. Bancshares, Inc.*, No. CIV.A. 514-026-DCR, 2014 WL 4783016, at *6 (E.D. Ky. Sept. 24, 2014) (rejecting argument that common ownership barred adverse representation against corporate affiliate that lawyer did not represent). If the Model Rules prohibit a lawyer being adverse to a client's corporate affiliate in an unrelated matter when the affiliate is also a client or

7

when the representation would be materially limited, then surely the Model Rules also prohibit a lawyer being adverse to such a corporate affiliate in the same matter. From either the viewpoint of Parts Place or JVI, Griffin Williams represents the client's affiliate in the same matter. Other than averring that Mr. Improta owns both companies, Parts Place and JVI do not present any argument or case law explaining why they should be treated as one entity rather than two for client conflicts purposes or why the Model Rules do not apply to Griffin Williams' representation of them here. Therefore, the Court will treat the companies as separate, potentially adverse entities. The Court thus turns to whether Griffin Williams' concurrent representation of the three Defendants created a conflict of interest.

Inconsistent positions, even taken in relation to a non-client, can create conflicts between co-parties. *See Walton v. Diamond*, No. 12 C 4493, 2012 WL 6587723, at *2 (N.D. Ill. Dec. 14, 2012) ("[U]nder section (a)(2), '[a] conflict may exist by reason of substantial discrepancy in the parties' testimony, incompatibility in positions in relation to an opposing party or the fact that there are substantially different possibilities of settlement of the claims or liabilities in question.'" (quoting ABA Model R. of Prof'l Conduct R. 1.7 cmt. 23)); *see also* ABA Model R. of Prof'l Conduct R. 1.7 cmt. 24 (allowing a lawyer to take inconsistent positions in different tribunals on behalf of different clients unless "there is a significant risk that a lawyer's action on behalf of one client will materially limit the lawyer's effectiveness in representing another client in a different case; for example, when a decision favoring one client will create a precedent likely to seriously weaken the position taken on behalf of the other client"). Therefore, in order to represent multiple "co-parties in civil matters," the lawyer must ensure that "there is no 'substantial discrepancy' among positions, testimony, or settlement prospects." *Walton*, 2012 WL 6587723, at *2 (quoting Annotated Model R. of Prof'l Conduct 130 (Ellen J. Bennett et al.

eds., 7th ed. 2011)). Here, Lectric Limited has sued each of the Defendants, alleging that Parts Place and DGW/Melrose infringed on Lectric Limited's T-3 mark and that JVI wrongly obtained trademark registrations for T-3 logos. Parts Place and DGW/Melrose both aver in defense that T-3 is a trademark or a brand that is either owned by General Motors (a theory that General Motors denies), properly licensed from JVI, or is generic or descriptive and thus not subject to a valid trademark. In contrast to Parts Place and DGW/Melrose, JVI claims here and before the USPTO that it owns three trademarks that use "T-3" in ways that appear similar to the way "T-3" appears in Lectric Limited's claimed mark. DGW/Melrose also has taken the position that Lectric Limited cannot own a Power Beam mark because the name is generic or descriptive. But Parts Place has claimed in front of the USPTO that Parts Place can and does own the Power Beam mark. The Court finds that the Defendants' positions conflict with one another and that advocacy for one client risks materially limiting advocacy for another.

Parts Place and JVI argue that DGW/Melrose, Parts Place, and JVI are on the same—not opposing—sides of the litigation here, so Griffin Williams' joint representation cannot create a conflict of interest. Of course, while direct adverse representation creates a concurrent conflict of interest, a representation of multiple parties that creates a significant risk of materially limiting the representation of another client also creates a conflict of interest. Model R. of Prof'l Conduct R. 1.7(a). Similarly, Parts Place and JVI's argument that *Guillen v. City of Chicago*, forecloses the existence of a conflict fails. In *Guillen*, the court agreed that there was no conflict because the joint representation would be not be "directly adverse to the representation of another client," but the court also questioned whether the "representation [might] be materially limited by other responsibilities of the attorney." 956 F. Supp. at 1426 (reviewing alleged conflict current client conflicts under previously controlling Rules of Professional Conduct for the Northern District of

Illinois). And unlike in *Guillen*, Griffin Williams represents co-party clients, and Lectric Limited avers that Griffin Williams' actions on behalf of one client cut against the legal defense or counterclaim of other clients. *Cf. id.* at 1424–25 ("No such catch–22 is evident in the case at bar. [The third-party witnesses represented by defendant's counsel] are not named as defendants, and their role at trial will apparently be limited to testifying as witnesses. Similarly, the plaintiff has not suggested that [the defendant's] counsel has taken or is likely to take any actions that might expose the [third-party witnesses] to liability.").

Parts Place and JVI also argue that "a factual and legal scenario exists whereby the 'T-3' word mark is found to be . . . unenforceable unless owned by GM . . . and JVI could still maintain ownership of its registration for the [T-3] logo marks," implying that co-representation will not materially limit Griffin Williams' responsibilities to any individual client. Doc. 81 at 7. The Court could certainly find that JVI can maintain its T-3 registrations and that Parts Place and DGW/Melrose may continue to license any use of "T-3" from JVI; similarly, if Parts Place owns the Power Beam mark, then such ownership would absolve Parts Place and DGW/Melrose of trademark infringement liability to Lectric Limited. *Cf. Midfirst Bank v. Curtis*, No. 03 C 4975, 2006 WL 2787485, at *2 (N.D. Ill. Sept. 22, 2006) (finding current client conflict where lawyers' clients both wanted a legal result that they could not obtain without depriving the other of the others' desired legal result). But Lectric Limited seeks a declaratory judgment against JVI to invalidate and cancel JVI's registrations, and if Parts Place and DGW/Melrose prevail on their alternative defense that the T-3 marks are not subject to trademark protection, then JVI would lose registration for its T-3 logos. Thus while Parts Place and JVI are correct that JVI's interests are not certainly misaligned with Parts Place and DGW/Melrose, Griffin Williams placed itself in the position of possibly choosing for which client to advocate at the expense of another.

Therefore Griffin Williams created a concurrent conflict of interest in representing all three Defendants. And even ignoring the relatedness of Parts Place and JVI, Griffin Williams' representation of DGW/Melrose still conflicted with its representation of JVI. Griffin Williams appears to concede as much, withdrawing its representation of DGW/Melrose after Lectric Limited moved for disqualification.

Further, Parts Place and JVI do not address Griffin Williams' concurrent representation of DGW/Melrose and Parts Place with respect to the Power Beam claims. DGW/Melrose's defenses to Lectric Limited's claims regarding infringement of the Power Beam mark—that GM validly owns the Power Beam trademark and licensed it to DGW/Melrose or that Power Beam is not protected under trademark law—cuts against Parts Place's assertion to the USPTO that Parts Place owns all Power Beam marks. By advocating for GM-ownership of Power Beam in this litigation on behalf of DGW/Melrose, Griffin Williams risked harm to Parts Place's position in front of the USPTO and this Court. This created another conflict of interest between clients DGW/Melrose and Parts Place.

The Courts' analysis does not end there, though. "Notwithstanding the existence of a concurrent conflict of interest . . . a lawyer may represent a client if: (1) the lawyer reasonably believes that the lawyer will be able to provide competent and diligent representation to each affected client; (2) the representation is not prohibited by law; (3) the representation does not involve the assertion of a claim by one client against another client represented by the lawyer in the same litigation or other proceeding before a tribunal; and (4) each affected client gives informed consent, confirmed in writing." Model Rule of Prof'l Conduct R. 1.7(b). At issue are the first and last factors and whether DGW/Melrose, Parts Place, and JVI could and did give informed consent to the joint representation.

Lectric Limited argues that Griffin Williams should never have taken the representation and that its clients could not waive the conflict. Because Griffin Williams' clients' first priorities are not directly aligned against each other, Model Rule 1.7 allows them to waive the conflict. *See id.*; *see also* R. 1.7 cmt. 14 ("Ordinarily, clients may consent to representation notwithstanding a conflict."); *id.* cmt. 23 ("Common representation of persons having similar interests in civil litigation is proper if the requirements of paragraph (b) are met."). And without alleging betrayed confidences or loyalty, Lectric Limited presents no compelling reason why Griffin Williams unreasonably attempted to help three aligned parties—related either by contract or by owner—and defeat the party jointly suing them. *Cf. id.* R. 1.7 cmt. 15 ("[U]nder paragraph (b)(1), representation is prohibited if in the circumstances the lawyer cannot reasonably conclude that the lawyer will be able to provide competent and diligent representation. See Rule 1.1 (competence) and Rule 1.3 (diligence)."); *id.* cmts. 29–33 (discussing important issues involved in common representation, especially privilege, confidentiality, and loyalty and noting that "each client in the common representation has the right to loyal and diligent representation").

Parts Place and JVI aver to the Court that "to the extent a potential conflict could have existed, the appropriate conflict waivers were obtained" to alleviate any chance that Griffin Williams' "representation of JVI was in conflict with its representation of [DGW/Melrose]." Doc. 81 at 3 n.3. Although this does not identify much about the conflict waivers—including when Griffin Williams obtained the waivers, how it provided informed consent for the waivers, or the scope of the waivers—the Court accepts the representation as true. But the conflict waivers between DGW/Melrose and JVI do not cure the concurrent conflicts of interest raised by Griffin Williams' simultaneous representation of either DGW/Melrose and Parts Place or Parts Place and JVI. And, even if the waivers did extend to those other co-representations, as

12

discussed above, Griffin Williams violated ethical rules by dropping DGW/Melrose as a client in order to continue representing Parts Place and JVI. *See Metro. Life Ins. Co.*, 2009 WL 1439717, at *5 (finding that law firm technically violated the District's previous ethical rule guarding against concurrent conflicts of interest by terminating its relationship with one client in order to represent another). Therefore, the Court finds that Griffin Williams violated Model Rule 1.7.

## II. Remedy for Violation of Model Rule 1.7

"Even if an ethical violation exists, a reviewing court may still deny a motion to disqualify" and "it is well-settled that disqualification does not flow automatically from a finding that a law firm violated a conflict of interest rule." *Metro. Life Ins. Co.*, 2009 WL 1439717, at *5. Model Rule 1.7 has two fundamental purposes: first, "serv[ing] as a prophylactic to protect confidences that a client may have shared with his or her attorney," and second, "safeguard[ing] loyalty as a feature of the lawyer-client relationship" because "[a] client should not wake up one morning to discover that his lawyer, whom he had trusted to protect his legal affairs, has sued him." *Landmark Am. Ins. Co. v. Deerfield Constr., Inc.*, No. 15 C 1785, 2017 WL 157858, at *14 (N.D. Ill. Jan. 12, 2017) (citation omitted). Lectric Limited demands the sanction of disqualifying Griffin Williams from representing any Defendants moving forward.

But Lectric Limited has not alleged that Griffin Williams obtained confidential information that will unfairly advantage or disadvantage Parts Place, JVI, or DGW/Melrose, and no Defendant has objected to Griffin Williams continuing to represent Parts Place or JVI. The record and Griffin Williams' in-court representations to the Court suggest that Griffin Williams' multiple-client-representation was part of the Defendants' defense plan—a multiple-front attack on Lectric Limited's positions that risks some individual consequences for their perceived greater goal of gaining the ability to produce headlights without fear of liability to Lectric

13

Limited. *See* Model R. of Prof'l Conduct R. 1.8(b) ("A lawyer shall not use information relating to representation of a client to the disadvantage of the client unless the client gives informed consent, except as permitted or required by these Rules."). The Court finds no betrayed confidences or disloyalty. And the Court must respect the Defendants' choice of counsel to accomplish their defense, to the extent their decisions do not run against the law.

If Griffin Williams obtains informed consent from all three Defendants, Griffin Williams might be able to continue to represent Parts Place and JVI because the waivers would mean that (1) Griffin Williams' former client, DGW/Melrose provided written informed consent to Griffin Williams representing another materially adverse party in the same matter, in accordance with Model Rule 1.9, *see* Model R. of Prof'l Conduct R. 1.9(a) (allowing former client adverse representation upon informed consent); and (2) Mr. Improta will allow one of his two wholly-owned companies to succeed at the expense of the other company, *see id.* R. 1.7 cmt. 31 ("In limited circumstances, it may be appropriate for the lawyer to proceed with the representation when the clients have agreed, after being properly informed, that the lawyer will keep certain information confidential."). Provided that Griffin Williams can now obtain consent from all three Defendants, including DGW/Melrose, who has new counsel, the Court finds no reason to disqualify Griffin Williams. *See Murray v. Vill. of Hazel Crest*, No. 06 C 1372, 2006 WL 3589969, at *4 (N.D. Ill. Dec. 7, 2006) (allowing multiple parties' attorney to remain counsel for less than all clients and requiring that "[i]f counsel desires to continue to represent one of the plaintiffs, counsel must carefully consider whether such representation would be appropriate and must obtain the consent of the other plaintiffs, including after each of the other plaintiffs has retained his new counsel").

The Court does find a lesser sanction appropriate, however, to remedy any potential that Griffin Williams' conflicts limited its representation of any of its clients. Griffin Williams aided each Defendant in answering and in filing counterclaims. These answers and counterclaims bring potential blemishes that the Defendants should not continue to carry in this litigation. *See Andrew Corp. v. Beverly Mfg. Co.*, 415 F. Supp. 2d 919, 928–29 (N.D. Ill. 2006) (preventing the use of patent opinion letters drafted by law firm during unwaived concurrent conflict of interest because the representation of multiple clients prevented the law firm from being able to provide the type of "competent, independent advice" required by the law). To eliminate any specter of sub-par representation to date—especially now that Griffin Williams has cut ties with DGW/Melrose in an attempt to preserve its representation of Parts Place and JVI, leaving DGW/Melrose on the hook if Griffin Williams did provide less than the quality representation— the Court strikes DGW/Melrose's answer and affirmative defenses [32], Parts Place's original and corrected answer and counterclaim [34, 36], JVI's answer [38], and DGW's amended counterclaim [44]. Upon providing the Court with proof of each Defendant's informed consent to Griffin Williams' continued representation of JVI and Parts Place following this Opinion and Order, the Court will allow Defendants to file new answers and counterclaims through their new counsel.

### III. Violation of Model Rule 3.7

Finally, Lectric Limited also seeks to disqualify Richard Williams from representing any Defendant because he will be an indispensable witness in this case, and they seek to impute Richard Williams' disqualification to his entire firm, Griffin Williams. Model Rule 3.7 bars a lawyer from acting as the trial attorney when he or she will likely be a "necessary witness" on a contested issue, unless disqualifying the lawyer would create a substantial hardship for the client.

15

Model Rules of Prof'l Conduct R. 3.7. Lectric Limited states that Richard Williams will testify about his work for Defendants before the USPTO, but at this time, before the close of discovery (currently stayed), it is unclear that Richard Williams must be a witness. Model Rule 3.7 requires that Williams' testimony must be "necessary." *Walton*, 2012 WL 6587723, at *2 (a necessary witness is not the same as the best witness and the attorney's testimony must be unobtainable elsewhere). Lectric Limited's request also prematurely calls for disqualification because Model Rule 3.7 only requires the disqualification of trial counsel at the time of trial. *See alfaCTP Sys., Inc.*, 2016 WL 687281, at *6 (noting concerns of jury confusion and appearance of impropriety raised by Rule 3.7 "do not come into play unless and until the attorney-witness is also trial counsel"); *see also Walton*, 2012 WL 6587723, at *4 (declining to disqualify attorney likely to become a necessary witness at trial where case was in early stages of litigation). Thus Lectric Limited may re-raise this issue at a more appropriate time, but the Court denies its motion without prejudice now, further noting that Model Rule 3.7 would not prohibit Griffin Williams from using attorneys other than Richard Williams at trial. *See* Model Rules of Prof'l Conduct R. 3.7(b) (if a lawyer is disqualified as a necessary witness, her firm can still participate in the trial unless another ethical problem under Model Rule 1.7 or 1.9 exists); *alfaCTP Sys., Inc.*, 2016 WL 687281, at *6 (noting same).

**CONCLUSION**

For the foregoing reasons, the Court grants Lectric Limited's motion to disqualify [52], in part. Because the Court finds that Griffin Williams LLP had a concurrent conflict of interest, the Court strikes DGW/Melrose's answer and affirmative defenses [32], Parts Place's original and corrected answer and counterclaim [34, 36], JVI's answer [38], and DGW's amended counterclaim [44], without prejudice to refiling after proof of informed consent to Griffin Williams' continued participation in this lawsuit, mooting Lectric Limited's motion to dismiss the counterclaims [49] to the extent Defendants' prior voluntary dismissals did not.

Dated: March 28, 2017

_____
SARA L. ELLIS
United States District Judge